BLIVEN *v.* UNITED STATES (No. 58).[1]

SUFFICIENCY OF PROTEST—VASELINE—PARAFFIN.

Where the importer claimed his importation was dutiable as petroleum under tariff act, 1897, at the rate of duty imposed by Germany on petroleum, and it appeared the rate was levied on the importation as paraffin and as vaseline oil, each of which was then dutiable at other and differing rates in Germany, a protest as to petroleum alone is not sufficiently exact; it does not show that that which was in the mind of the protesting importer was brought to the knowledge of the collector.— Citing Carter *v.* United States, *supra*, p. 64 (T. D. 31033).

## United States Court of Customs Appeals, January 18, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York (T. D. 27550).

[Affirmed.]

*Walden & Webster* for appellants.

*D. Frank Lloyd,* Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The point at issue in this case is the validity of two protests.

The issuable portion of the protests, which are, except as to particulars noted, identical in language, is as follows:

Protest is hereby made against your decision assessing duty at 1.426 cents per pound or other rate or rates on certain paraffin liquid (vaseline oil) covered by entries below named. The ground of objection, under the tariff act of July 24, 1897, is that said merchandise is free of duty under paragraph 633, or if not, then at 0.2852 cent per pound, as it is made in Germany from Russian petroleum; or if not, then at the rate imposed by Germany on petroleum imported into that country or at the appropriate rate and under the proper paragraph according to the component material of chief value.

The return of the collector was the same, except as noted in each case, and contained the following statement:

An inspection of the invoice and entry shows that the merchandise in question was imported from Germany, and was returned by the appraiser as "paraffin oil" (vaseline oil). According to the declaration of the manufacturers and sellers, attached to the invoice, it would appear that the merchandise was refined in Germany from crude petroleum produced in Russia.

This office, in the liquidation of the entry, charged a countervailing duty (1 ruble per pood) equal to the duty imposed by Russia on a similar product imported into Russia from the United States, in accordance with the proviso to paragraph 626, act of July 24, 1897, and T. D. 25457. Note T. D. 19263 as to rates charged by various countries.

T. D. 19263 reads as follows:

*To officers of the customs and others concerned:*

The proviso to paragraph 626, act of July 24, 1897, provides that "if there be imported into the United States crude petroleum, or the products of crude petroleum produced in any other country which imposes a duty on petroleum or its products exported from the United States, there shall in such cases be levied, paid, and collected a duty upon said crude petroleum or its products so imported equal to the duty imposed by such country."

The appended schedule of the countries imposing duty on crude petroleum and its products, and the respective rates of duty so imposed, is published for your information and guidance.

O. L. SPAULDING, *Assistant Secretary.*

---

[1] Reported in T. D. 31239 (20 Treas. Dec., 149).

\* \* \* \* \* \* \*

GERMANY.

\* \* \* \* \* \* \*

Paraffin, per 100 kilos, 10 marks.

Petroleum, crude or refined, per 100 kilos, 6 marks.

\* \* \* \* \* \* \*

Vaseline, scented, per 100 kilos, 20 marks.

\* \* \* \* \* \* \*

The United States Court of Appeals for the Second Circuit, in the case of United States v. R. F. Downing & Co., and Same v. Schoellkopf, Hartford & Hanna Co. (146 Fed. Rep., 56), after citing the following:

Paragraph 633 of the tariff act of 1897 reads as follows:

633. Paraffin.

The pertinent proviso to paragraph 626 is in the following language:

626. \* \* \* : *Provided*, That if there be imported into the United States crude petroleum, or the products of crude petroleum produced in any country which imposes a duty on petroleum or its products exported from the United States, there shall in such cases be levied, paid, and collected a duty upon said crude petroleum or its products so imported equal to the duty imposed by such country—

held that the proviso to paragraph 626 was also intended by Congress as a proviso and limitation upon paragraph 633. To be precise, the language of the court is as follows:

Manifestly, Congress sought to introduce reciprocity in petroleum products by discriminating against any country which discriminated against the United States; it has used language apt to express that intent, and we see no reason why the proviso should not be read into every section of the tariff act which enumerates a product of petroleum. The two sections may fairly be read together to effect such intent, as follows:

"Articles known commercially as paraffin shall have free entry, but if any of them is a product of petroleum—a product of which crude petroleum is the component of chief value—and was produced in a country which lays duty \* \* \* it shall pay an equal duty."

The Board of General Appraisers overruled these protests on the ground that they were insufficient. We think the board did not err. It will be noted, as announced in T. D. 19263, the duties imposed by Germany upon paraffin, petroleum, and vaseline differ as to rates. The importer in his protest did not claim the rate of duty applicable to *paraffin* in the one case or *vaseline* in the other case, but the rate of duty imposed by Germany upon *petroleum*.

It has been uniformly held by the courts that where a genus and species were both named in the tariff act it will not suffice in the protest to rely upon that relationship and allege a rate applicable to merchandise therein other than of the name intended to be counted upon for judgment. That in tariff legislation the genus and species are regarded as separate and distinct legislative subjects, and must be so regarded in the administration and construction of tariff laws, is well

settled in the case of Arthur *v.* Lahey (96 U. S., 112), wherein the Supreme Court of the United States uses the following language:

When Congress has designated an article by a specific name, and by such a name imposed a duty upon it, general terms in a subsequent act, or in a later part of the same act, although sufficiently broad to comprehend such article, are not applicable to it. Homer *v.* Collector (1 Wall., 486); Reiche *v.* Smythe (13 id., 162); Smythe *v.* Fiske (23 id., 374); Movius *v.* Arthur (95 U. S., 144).

In Chung Yune *v.* Kelly (14 Fed. Rep., 639) the Circuit Court for the District of Oregon applied this principle to protests. The protest alleged the merchandise to be sago flour, and the court found it to be cassava, or root flour, and said while this was a species of sago flour the protestant could not recover, because, states the court—

The goods were entered by the plaintiff as sago flour and he protested against the payment of duties upon that ground alone, * * *. The burden of proof is upon the plaintiff, and before he can recover he must prove the truth of his allegation and protest that this article is sago flour. * * * When an article is designated in an act of Congress by a specific name, general terms in the same or a subsequent act, although broad enough to comprehend it, are not considered applicable to it.

More precise was the point decided in Smith and others *v.* Schell and others (27 Fed. Rep., 648). The gist of the case is concisely set forth, as far as pertinent, in the syllabus, which states:

But if this merchandise is shown to be a manufacture of a material bearing another name than the material of which the manufacture named in the protest is composed, and the tariff act makes a clear and positive distinction between these materials by imposing thereon eo nomine different rates of duty, the court, in considering the tariff act, will make the same distinction, although the name of the second material is the name of the genus, and the name of the first is the name of a species thereof; and the claimants are not entitled to recover.

See also In re Claflin & Co. (47 Fed. Rep., 875).

These cases, it seems to us, describe a rule that is not alone sound but in perfect accord with the fundamental principles underlying the sufficiency of protests, as heretofore announced by this court in Carter *v.* United States (*supra*, p. 64; T. D. 31033). The cardinal rule laid down in that case, with reference to the sufficiency of protests, is:

A protest * * * is sufficient, if it shows fairly that the objection afterwards made at the trial *was in the mind of the party and was brought to the knowledge of the collector*, so as to secure to the Government the practical advantage which the statute was designed to secure.

It will be noted that upon paraffin Germany imposes a duty per 100 kilos of 10 marks; upon petroleum, crude or refined, 6 marks; upon vaseline, scented, 20 marks.

The proviso to paragraph 626 adopts for dutiable purposes the tariff law of Germany in such cases as these. That law may be regarded for the purpose of present consideration as part and parcel of the tariff act of 1897. It bears a separate and distinct rate of duty upon paraffin, petroleum, and vaseline.

The importer alleges in his protest that the applicable rate of duty was that levied by Germany upon *petroleum*. It is now admitted in

this record that the rate invoked was the rate levied uon *paraffin* in the one case and *vaseline oil* in the other, separate and distinct rates. The cardinal principle underlying the sufficiency of protests being that the protestant must *direct the mind of the collector to the appropriate provision of law.* It can not by any stretch of imagination be said that this requirement is satisfied when the protestant directs the mind of the collector to some other provision of law assessing a different rate of duty. Such is a more violent contravention of the requirement because it not only does not leave the mind of the collector free to determine for himself the appropriate provision but carries his mind away from the applicable clause to an inapplicable one, and thus confuses the situation. Such is the case here presented.

*Affirmed.*