UNITED STATES *v.* MACKSOUD IMPORTING CO., E. MALLOUK & BRO., MALLOUK BROS. (No. 4040) [1]

United States Court of Customs and Patent Appeals, May 29, 1937

*Joseph R. Jackson*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney, of counsel), for the United States.
*Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellees.

[Oral argument February 10, 1937, by Mr. Jackson and Mr. Isenschmid]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Imported merchandise (the character of which is not important here) was assessed for duty by the collector at the port of New York at 90 per centum ad valorem under paragraph 1529 of the Tariff Act of 1930.

The importers filed three protests—Nos. 757119–G/43085, 760215–G/27004, and 778347–G/13190—against the action of the collector, claiming that the imported merchandise was not dutiable as assessed but that it was properly dutiable alternatively under various paragraphs of that act. After the reports of the collector and the various entries and accompanying papers had been filed in the United States Customs Court, but prior to the time the causes were called for trial, the importers moved to amend each of the protests by adding thereto the following claim:

Claiming further that as to said merchandise assessed at 90% under paragraph 1529, Tariff Act of 1930, which is invoiced in Mexican dollars, you have improperly and incorrectly converted said Mexican dollars into United States dollars. That you should have converted said Mexican dollars at the value proclaimed by the Director of the Mint for the quarter in which said merchandise was exported.

On May 12, 1936, the Second Division of the Customs Court, in opinions by Kincheloe, Judge, Dallinger, Judge, concurring, and Tilson, Judge, dissenting, granted the importers' motions to amend the protests. In its opinions, the court stated that the reasons for granting the motions to amend were fully set forth in the majority opinion in the case of *Macksoud Importing Co.* v. *United States*, T. D. 48185, decided February 26, 1936.

Thereafter, on May 15, 1936, the cases having been consolidated, the cause came on for trial and was submitted upon a stipulation entered into by counsel for the parties.

The stipulation, so far as pertinent to the issues here involved, reads:

Protest 757119–G is abandoned as to invoice No. 1 accompanying entry 38105 and the above protests are abandoned as to all entries not listed in said Schedule A.

Schedule A, referred to and made a part of the stipulation, is as follows:

*Schedule A*

| Protest No. | Importer | Entry No. |
|---|---|---|
| 757119–G/43085_____ | Macksoud Importing Co_____ | 38105 |
| 778347–G/13190_____ | Mallouk Bros_____ | 711138 |
| | | 721313 |
| | | 728031 |
| 760215–G/27004_____ | E. Mallouk & Bro_____ | 769039 |
| | | 773283 |

On July 15, 1936, the trial court, in an opinion by Kincheloe, Judge, Dallinger, Judge, concurring, and Tilson, Judge, dissenting from that part of the decision of the court allowing the amendments to the protests, stated that, as no evidence was introduced by the importers relative to the collector's classification of the merchandise at 90 per centum ad valorem under paragraph 1529, *supra*, the presumption of correctness attending his classification had not been overcome, and that the only question remaining for determination was "the rate at which the currency of the respective invoices, expressed in Mexican dollars, should be converted into United States dollars under section 522 of the Tariff Act of 1930." The court sustained the amended protests as to that issue, but overruled them in all other respects, and, in its decision, quoted at length and with approval from its decision in the case of *Macksoud Importing Co.* v. *United States, supra.*

In the *Macksoud Importing Co.* case, *supra*, the trial court held that a protest which was limited to the claim that the collector was wrong in assessing the merchandise covered thereby at 90 per centum ad valorem under paragraph 1529 of the act of 1930, and which contained several alternative claims for classification of such merchandise at lower rates of duty, might properly be amended under the provisions of section 518, Tariff Act of 1930, by adding a claim for an allowance in duty on the ground of shortage of the merchandise covered by the protest, and that such an amendment did not introduce a new cause of action, which would be barred by the statute of limitations contained in section 514 of that act.

The issue before us, as stated in the brief of counsel for the Government is: "Does the amendment to the protests herein raise a new cause of action which was barred by the statute of limitations?"

Prior to the enactment of the Tariff Act of 1922, the United States Customs Court had no authority to permit amendments to protests. However, in section 514 of that act, the Congress provided that—

Under such rules as the Board of General Appraisers [now the United States Customs Court] may prescribe, and in its discretion, a protest may be amended at any time prior to the first docket call thereof.

Section 518 of the Tariff Act of 1930 provides, among other things, that—

Under such rules as the United States Customs Court may prescribe, and in its discretion, the court may permit the amendment of a protest, appeal, or application for review.

In its report to accompany H. R. 2667 (which later became the Tariff Act of 1930), the Committee on Ways and Means of the House of Representatives, at page 181, stated, with reference to the provisions of section 518, hereinbefore quoted, that—

A provision in section 514 of the 1922 Act authorizes the court to permit the amendment of a protest at any time before the first docket call. There is no express provision relating to the amendment of appeals or applications for review. There has been some question as to how far the general authority given by section 518 to prescribe rules of procedure covers this matter. A provision has, therefore, been inserted authorizing the board [now the United States Customs Court] in its discretion to permit the amendment of protests, appeals, and applications for review *at any time,* and the provision in section 514 has been eliminated. [Italics ours.]

Rule 38 of the United States Customs Court, so far as applicable to the instant case, provides that—

If the plaintiff desires to amend his protest, appeal, or application for review, as provided in section 518 of the Tariff Act of 1930. he may do so by filing a motion in writing setting forth the proposed amendment at any time before the cause is called for trial.

Section 514 of the Tariff Act of 1930, so far as applicable to the issues here involved, provides that—

all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of any entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

Counsel for the Government objected to the amendments to the protests at the time they were granted by the trial court, and here

contend that such amendments set forth new and distinct causes of action not contemplated by the original protests; that they "are barred by Section 514 of the Tariff Act of 1930 which provides that protest must be filed within sixty days after liquidation"; and that it is well settled "in customs jurisprudence that the importer must rely upon the objections set forth in his protest and that said objections must be distinct and specific."

Counsel for the Government call our attention to authorities, both federal and state, wherein it is held that, if an amendment introduces a new cause of action, its standing is that of a new and independent suit, so far as the statute of limitations is concerned, and it is barred if not filed within the time permitted by the statute.

In their brief, counsel for the Government cite the decision in the case of *Union Pacific Railway* v. *Wyler*, 158 U. S. 285, 296–8, and quote therefrom as authority for their position.

In that case the Supreme Court, after stating that—

The general rule is, that an amendment relates back to the time of the filing of the original petition, so that the running of the statute of limitations against the amendment is arrested thereby. · But this rule, from its very reason, applies only to an amendment which does not create a new cause of action. The principle is, that, as the running of the statute is interrupted, by the suit and summons, so far as the cause of action then propounded is concerned, it interrupts as to all matters subsequently alleged, by way of amendment, which are part thereof. But where the cause of action relied upon, in an amendment, is different from that originally asserted, the reason of the rule ceases to exist, and hence the rule itself no longer applies * * *,

quoted with approval the following statement of the law from the decision in the case of *Mohr* v. *Lemle*, 69 Ala. 180:

The latitude of amendment allowed the plaintiff cannot be permitted to work injustice to the defendant, or to deprive him of any just and rightful defense. The plaintiff may introduce a new cause of action by amendment; but such amendment cannot have relation to the commencement of the suit, so as to avoid the bar of the statute of limitations, if the statute would operate a bar to a new suit commenced for that cause of action, at the time of making the amendment. The whole doctrine of relation rests in a fiction of law, adopted to subserve, and not to defeat right and justice. When the amendment introduces a new right, or new matter, not within the *lis pendens*, and the issue between the parties; if at the time of its introduction, as to such new right or matter, the statute of limitation has operated a bar, the defendant may insist upon the benefit of the statute, and to him it is as available, as if the amendment were a new and independent suit.

That the rule so stated is followed by the federal courts, we have no doubt. See *Tilton et al.* v. *Cofield et al.*, 93 U. S. 163, 166; *Chapman* v. *Barney*, 129 U. S. 677; *Seaboard Air Line Railway* v. *Renn*, 241 U. S. 290, 293, 294.

Our attention is also called to the decision of this court in the case of *United States* v. *Sheldon & Co.*, 5 Ct. Cust. Appls. 427, T. D. 34946, wherein the court, after stating that, in the case of *Bliven* v. *United*

*States*, 1 Ct. Cust. Appls. 205, T. D. 31239, it was held, in substance, that—

-one cardinal rule in construing a protest is that it must show fairly that the objec-tion afterwards made at the trial was in the mind of the party at the time the pro-test was made and was brought to the knowledge of the collector to the end that he might ascertain the precise facts and have an opportunity to correct the mistake and cure the defect if it was one that could be obviated. This, in effect, has long been the doctrine enunciated by the Supreme Court of the United States. Davies *v.* Arthur (96 U. S., 148), Arthur *v.* Morgan (112 U. S., 495), United States *v.* Salambier (170 U. S., 621). See also Carter *v.* United States (1 Ct. Cust. Appls., 64; T. D. 31033) and Sonneborn's Sons *v.* United States (3 Ct. Cust. Appls., 54; T. D. 32348),

said:

In the various cases where this principle has been upheld it will appear that in some the correct paragraph has been cited without mentioning the rate of duty; again, the correct rate has been mentioned without referring to the paragraph; and other discrepancies and infirmities have been considered and discussed. It has, however, uniformly been considered, as already suggested, that one great rule of construction is that *at the time he makes his protest the importer must have in mind the objection afterwards made at the trial* and must sufficiently, in view of all the circumstances, call the collector's attention thereto, so that he may consider and pass upon the same; and the determination of this case must stand or fall upon the application of that rule. [Italics quoted.]

The principles therein announced have been followed by this court repeatedly, and are applicable today so far as original protests are concerned. Furthermore, a protest is an importer's pleading— *J. Benitez Cintes* v. *United States*, 18 C. C. P. A. (Customs) 361, T. D. 44614; *Lloyd's Subagent* v. *United States*, 19 C. C. P. A. (Customs) 408, T. D. 45576—and serves as a notice to the collector of the claims made by a protestant, as well as an appeal to the United States Customs Court. *James Akeroyd & Son* v. *United States*, 19 C. C. P. A. (Customs) 249, 255, T. D. 45341.

Counsel for appellees contend that the trial court properly allowed the amendments to the protests, and, in support of their position, state in their brief that the United States Customs Court has held in several cases that a protest might be amended under the quoted provisions of sections 514 and 518, *supra*, by the addition of new claims as to the rate or rates of duty, and as to shortage and net weight of imported merchandise covered by the protests; that such claims, so long as they related to merchandise covered by the original protests, were not in the nature of new causes of action, and, therefore, were not subject to the sixty-day limitation contained in sections 514 of the acts of 1922 and 1930.

It is further contended by counsel for appellees that the action of the Customs Court in allowing the involved amendments was, under the quoted provisions of section 518, *supra*, within the discretion

of the trial court, and that, unless a clear abuse of such discretion is shown, which, it is claimed, has not been established in the instant case, the granting of the motions to amend is not error. Counsel advance the further theory that as the protests here involved contain the following language:

We hereby protest against your decision, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character, and your liquidation and assessment of duties, on the importations below mentioned—

the averments contained in the amendments to the protests did nothing more than state the facts relative to the formal averments in the original protests; that is, that the orders and findings entering into the collector's decision as to the amount of duties chargeable were illegal; and that, therefore, the amendments to the protests do not set forth a new cause of action.

Finally it is contended by counsel for appellees that, at the time of the enactment of the Tariff Act of 1930, the Congress is presumed to have had knowledge of the decision of the United States Customs Court in the case of *Monroe-Goldkamp Co.* v. *United States,* 49 Treas. Dec. 421, T. D. 41423, decided March 17, 1926, wherein it was held that the quoted provisions of section 514 of the Tariff Act of 1922 were—

evidently intended to permit an amendment relating to the merchandise covered by the original protest, and permitted the filing of additional claims germane to the original protest and to the merchandise therein described,

which decision was followed in the cases of *Rosenberg & Co.* v. *United States,* 50 Treas. Dec. 803, Abstract 1465, decided December 13, 1926, and *G. W. Sheldon & Co.* v. *United States,* 52 Treas. Dec. 48, T. D. 43215, decided July 14, 1927, and that, by the reenactment of those provisions in substantially the same language in section 518 of the Tariff Act of 1930, it must be presumed that the Congress intended to give legislative sanction to such construction.

In the *Monroe-Goldkamp Co.* case, *supra,* the court held that an amendment which included merchandise not covered by the original protest was not within the purview of the quoted provisions of section 514 of the Tariff Act of 1922, because such amendment would be in the nature of a new protest, and would be barred by the sixty-day limitation contained in that section. In so holding, the court, in addition to the matter hereinbefore quoted, said:

While a protest, under section 514, *may* be amended, this privilege, in our opinion, only applies to the correction of errors therein, and to merchandise germane to the protest as filed, and not to the enlargement thereof to cover other merchandise than that originally covered thereby. An amendment must be germane to the original subject under consideration. [Italics quoted.]

In the cases of *Rosenberg & Co.* and *G. W. Sheldon & Co., supra*, similar issues were presented, and the conclusions reached by the trial court in those cases were the same as that reached in the *Monroe-Goldkamp Co.* case.

In the case of *Max Block & Co., Inc., et al.* v. *United States*, 65 Treas. Dec. 1560, Abstract 28178, decided June 4, 1934, the trial court held that a protest which was limited to the claim that certain pimientos were not dutiable at 6 cents per pound under paragraph 775 of the Tariff Act of 1930, as assessed by the collector, but were properly dutiable at 35 per centum ad valorem under that paragraph, could properly be amended, in the discretion of the court, by the addition of the claim that "specific duties should have been assessed on the net weight of the pimientos, not including brine, oil, water, or other liquid," and that such amendment did not introduce a new and distinct cause of action and was not barred by the limitations contained in section 514 of that act.

In the case of *Agfa Ansco Corp.* v. *United States*, 66 Treas. Dec. 169, T. D. 47217, the trial court held that a protest which was limited to the claim that assessment of duty of 3 cents per pound under section 601 (c) (7) of the Revenue Act of 1932, might, under the quoted provisions of section 518, *supra*, be amended so as to set forth a claim that the assessment of duty by the collector at 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 was wrong, and that the merchandise was properly dutiable at only 20 per centum ad valorem under paragraph 1551 of that act.

It will be observed from the decisions of the United States Customs Court, hereinbefore referred to, that the court has proceeded upon the theory that the quoted provisions of section 514 of the Tariff Act of 1922, and section 518 of the act of 1930, authorized that court, in its discretion and under such rules as it might prescribe, to permit protests to be amended by the addition of new claims relating to the merchandise covered by such protests, which might have been included originally, and that such claims were not new and separate causes of action, and, therefore, were not barred by the statute of limitations.

Relative to the contention made by counsel for appellees that the doctrine of legislative approval of judicial decisions is applicable to the issues in the case at bar, it is sufficient to say that the issues here presented were not before the trial court in the cases of *Monroe-Goldkamp Co., Rosenberg & Co.*, and *G. W. Sheldon & Co., supra*, decided prior to the enactment of the Tariff Act of 1930, nor were they discussed in the decisions in those cases, although the court did indulge in some general observations relative to the construction to be placed upon the quoted provisions of section 514 of the Tariff Act of 1922.

It is true, as stated by counsel for appellees, that it appears from the report of the hearings before the Committee on Ways and Means of the House of Representatives (Tariff Readjustment, 1929, at page 10629) that the Los Angeles Chamber of Commerce stated in substance in its brief that the provisions of section 514 of the Tariff Act of 1922, relating to amendments to protests, had "been interpreted by the court" to mean *that claims other than those specified in a protest* might be made by amendment but must be limited to the merchandise covered by the original protest, and suggested that the provisions of that section be amended so as to include all merchandise covered by an entry, whether or not such merchandise was covered by the original protest.

Counsel for appellees contend that the statements contained in the brief of the Chamber of Commerce of Los Angeles were actual notice to the Congress of the decisions of the United States Customs Court.

The difficulty with that contention is that the decisions in the cases decided prior to the enactment of the Tariff Act of 1930, hereinbefore referred to, did not hold that new claims relating to merchandise covered by the original protest could be introduced by amendment. The decisions in those cases held merely that claims relating to merchandise not covered by the original protest could not be introduced by amendment. See *Marshall Field & Co.* v. *United States*, 20 C. C. P. A. (Customs) 225, T. D. 46037.

Subsequent to the trial court's decision in the instant case, the Third Division of the United States Customs Court, in an opinion by Cline, Judge, held that a protest which was limited to the collector's assessment of 10 per centum additional duty, under section 304 of the Tariff Act of 1930, on merchandise not legally marked to indicate the country of origin could not be amended by adding a claim that the merchandise was not dutiable at 25 per centum ad valorem, under paragraph 41 of that act as assessed by the collector, but was free of duty under paragraph 1755, because the claim proposed to be introduced by amendment constituted a new cause of action, and was barred by the sixty-day limitation, contained in section 514 of that act.

Prior to the enactment of the provisions of section 514 of the Tariff Act of 1922, permitting amendments to protests, the courts, construing the statutes permitting the filing of protests against the decisions of the collector, held, in effect, that new and distinct claims as to the rate or rates of duty and other claims, which might have been, but were not, specifically set forth in protests, were separate and distinct causes of action, which presented new issues, and could not be raised in a new protest nor be introduced by amendment after the statute of limitations had run. See *Davies* v. *Arthur*, 96 U. S. 148; *Arthur* v. *Morgan.* 112 U. S. 495: *In re Collector of Customs*, 55 Fed.

276; *Benjamin Iron & Steel Co.* v. *United States,* 2 Ct. Cust. Appls. 159, T. D. 31677.

The Congress must have had knowledge of the well-established principles, hereinbefore stated, relating to protests, and it must have known that section 514 of the Tariff Act of 1922 provided that a protest must be filed within sixty days after liquidation of an entry, and that, under the provisions of section 515 of that act, the collector had authority to review his decision within sixty days after a protest was filed. Familiar as it was with the law relating to protests, the Congress, nevertheless, provided in general terms in section 514 of that act that a protest might be amended, under such rules as the Board of General Appraisers (now the United States Customs Court) might prescribe, and in its discretion, at any time after it had attained jurisdiction, but "prior to the first docket call" of such protest.

With the exception of the provisions for the filing of amendments to protests (contained in section 518 of the Tariff Act of 1930), section 514 of the Tariff Act of 1930, so far as the issues here are concerned, is identical with section 514 of the act of 1922. Section 515 of the Tariff Act of 1930 provides, among other things, that the collector shall review his decision within *ninety days* after a protest is filed against it.

Section 518 of the Tariff Act of 1930 specifically provides that the United States Customs Court may, in its discretion and under such rules as it may prescribe, permit amendments to protests. It is obvious that it was the purpose of the Congress to permit such amendments only after the collector had lost, and the Customs Court had obtained, jurisdiction of such protests. Therefore, the Congress could not have contemplated that the averments contained in such amendments would aid the collector in reviewing his decision, or that the matter contained in such averments was in the mind of the protestant at the time the original protest was filed.

It certainly was not the purpose of the Congress to limit the operation of the quoted provisions of section 518, *supra,* to amendments for corrections of defects in form only, because, under the statute of *jeofails*—section 954 of the Revised Statutes (sec. 777, title 28, U. S. C.)—the United States Customs Court already had authority to correct "any defect or want of form" in pleadings, and in processes issued by it. *United States* v. *Bracher & Co. et al.,* 13 Ct. Cust. Appls. 432, 437, T. D. 41344. See also *United States* v. *Monsanto Chemical Works,* 21 C. C. P. A. (Customs) 33, 39, T. D. 46377. Nor do we believe that it was the intention of the Congress to limit amendments to statements of fact which merely amplify claims contained in protests, because, under the law, claims made in protests must be sufficiently definite and specific to inform the collector of the objections to his decision.

Surely, if protests are sufficiently definite and specific to inform the collector of the claims made therein, they are sufficiently definite and specific to inform the United States Customs Court of the issues presented thereby.

Why, then, should the Congress provide for amendments to protests, after the United States Customs Court has obtained jurisdiction, unless it was its purpose to give that court the power, in its discretion and under such rules as it might prescribe, to permit, by such amendments, the presentation of new and additional claims, which might have been made in the original protest *as to the merchandise covered by that protest?* We think that that was the purpose of the Congress, and that any other construction of the provisions in question would make them practically inoperable.

Accordingly, we are of opinion that claims permitted to be introduced by amendment were not intended by the Congress to be considered new and separate causes of action, which, under the decisions hereinbefore referred to, would be barred by the statute of limitations.

It was suggested in oral argument in this court that such a construction of the provisions in question would permit protestants to deliberately circumvent the provisions of section 514, which require them to state their objections to the collector's decision definitely and specifically, the purpose being to give the collector an opportunity to review his decision and to revise it if he deems it proper to do so, and thus avoid litigation.

We are not impressed with that suggestion, because the Congress has provided that amendments to protests might be made only in the discretion of the trial court, and under such rules as it might prescribe, evidently relying upon that court to prevent any deliberate circumvention of the law.

It may be said in conclusion that it should be understood that the construction herein given to the provisions of section 518 of the Tariff Act of 1930 is not intended to, and from its very nature could not, affect the provisions of section 514 of that act.

For the reasons stated, the judgment is *affirmed.*

### DISSENTING OPINION

LENROOT, Judge: I feel impelled to dissent from the conclusion reached by the majority of the court herein, for in my opinion the amendments to the protests here involved state a new cause of action which was barred by the statute of limitations.

As I construe the opinion of the majority, it holds that the amendments do state a new cause of action in each protest, and in courts of general jurisdiction amendments to a bill or complaint do not relate back to the time of original filing so as to avoid the bar of the statute of limitations. It is also held in the majority opinion that such was

the rule in customs law prior to the enactment of the Tariff Act of 1922, which for the first time provided for the amendment of protests, and this provision in a modified form was continued in section 518 of the Tariff Act of 1930. It is solely by virtue of the last-named provision that the majority affirm the judgment appealed from.

In my judgment Congress never intended to change so radically the general rule respecting amendments as to permit, through amendment of protests, adding new causes of action barred by the statute of limitations.

The majority opinion states that the power to amend protests could not have been for correction of defects in form only, because under the statute of *jeofails* the United States Customs Court already had authority to correct "any defect or want of form" in pleadings and processes issued by it, and in support of this statement the case of *United States* v. *Bracher & Co. et al.*, 13 Ct. Cust. Appls. 432, T. D. 41344, is cited. I would observe that this decision was rendered on January 18, 1926, and the case arose under the Tariff Act of 1922. It was by virtue of the provisions of the Tariff Act of 1922 that this court, in the case of *United States* v. *Macy & Co.*, 13 Ct. Cust. Appls. 245, T. D. 41199, for the first time judicially declared as follows:

\* \* \* With the enlarged powers which have been conferred upon the board and its members by Congress, we can not doubt that the board is a court of the United States of limited and special jurisdiction. Its powers and functions are judicial, its process, forms, and practice are judicial, and its decisions and judgments have the force and conclusiveness of those of other courts.

It will be remembered that the power to amend protests was first provided for in section 514 of the Tariff Act of 1922. Under previous tariff acts it had never been held that the statute of *jeofails* was applicable to the Board of General Appraisers. Therefore Congress, in providing for amendments to protests in the Tariff Act of 1922, might well have considered that the statute of *jeofails* was not applicable, and therefore the Board of General Appraisers was given specific power to allow amendments in such cases as are provided for by the statute of *jeofails*.

Furthermore, I cannot agree with the majority opinion that the power of amendment provided for by section 518 of the Tariff Act of 1930 could have no practical effect unless it includes adding new causes of action which, at the time of amendment, were barred by the statute of limitations under the general rule.

The cause of action set out in the protests herein was for the refund of money to the importer arising out of alleged improper classification of merchandise. The merchandise was not the cause of action, but its classification by the collector. In order for the importer to prevail it was necessary for him, first, to establish that the classification made by the collector was wrong, and second, that the classification

claimed in his protest was right. The cause of action was the claimed improper classification by the collector. In my opinion an amendment to a protest setting up an alternative claim to classification under a paragraph not claimed in the original protest would not be a new cause of action, but would merely affect the amount of recovery claimed under the original cause of action, to wit, the classification of the merchandise by the collector.

It is also true that it is possible for amendments to be made without. contravening the general rule of law respecting the bar of the statute of limitations. It would be possible for an importer to protest a. liquidation by the collector the day after it was made, for the collector to deny the claims made in the protest and immediately transmit the papers to the Customs Court, leaving 58 days in which amendments might be allowed by the Customs Court without contravening the general rule of law.

Under the decision of the majority, however, an importer may file a protest against the classification of merchandise, and, after the statute of limitations had run, apply to the Customs Court for an amendment to the protest abandoning his original cause of action (as was done in the case at bar) and setting up a new cause of action for the refund of money collected from him growing out of the failure to mark the merchandise, or a new cause of action claiming that the merchandise was American goods returned, or a new cause of action claiming that the appraisement of the merchandise was void, as well as the new cause of action here involved, viz., the conversion of Mexican dollars into United States dollars. These are some of the new causes of action that may be set up under the majority opinion.

While the majority opinion states that nothing therein should be construed to affect the provisions of section 514 of the Tariff Act of 1930 respecting protests, in my judgment the conclusion reached is contrary to the entire spirit and purpose of that section.

For the reasons stated, I think the judgment appealed from should be reversed.